GILMORE & *als. v.* GALE.

A demand made under the provisions of chapter 184, secs. 15 and 16, of the Revised Statutes, upon the holders of a mortgage of personal property, and of the notes secured thereby, which had been assigned to them by the mortgagee as collateral security for a debt due to them from the mortgagor for " an account, *under oath, of the amount of the debt or debts, demand or demands,* secured by the mortgage," is in conformity with the requirements of the statute.

An account rendered in such case of the amount of the debt for which the mortgage and notes are held as collateral, is not a compliance with the statute, and a creditor of the mortgagor having attached the mortgaged property, and made such demand, is entitled to hold the property by virtue of the attachment as against the assignees of the mortgage.

THIS is an action of trover, for certain goods described in the declaration, submitted to the court upon the following agreed statement :

On the 12th of June, A. D. 1854, John S. Colburn mortgaged to Ebenezer Colburn, by his deed, duly executed, and recorded on the same day, all the goods then in and about the store occupied by said John S., conditioned to secure $1200, according to the tenor of his three promissory notes of hand, dated, one ot them February 26, 1854, for the sum of $500; one other note, dated April 15, 1854, for the sum of $500; one other note, for the sum of $200, dated June 12, 1854, and all of said notes on demand, with interest.

On the 16th day of June, 1854, the stock of goods in the store was attached by Joseph M. Rowell, a deputy sheriff, duly deputed by the defendant, on a writ of attachment in favor of one Harrison Prescott against John S. Colburn, returnable at the court of common pleas for Hillsborough county, October term, 1854, and also on the same day again attached and held on a writ of attachment in favor of Tenney & Ballister, and on the following day further attached on a like writ, in favor of one Robert Briggs, both against said John S. Colburn, their writs being also returnable to the court of common pleas for Hillsborough county, October term, 1854; and they were duly entered in court, and were pending therein at the commencement of this suit. On the 26th of June, 1854, said Rowell made out a demand in writing, as follows:

"JUNE 26, 1854.

*To Ebenezer Colburn, of Stafford, in the County of Tolland, in the State of Connecticut:*

SIR: On the 16th day of the present month I attached all the goods in and about the store now occupied by John S. Colburn, in Pembroke, in the State of New-Hampshire, as the property of said John S. Colburn, said to be subject to a mortgage to you.

I now demand of you an account under oath of the amount of the debt or demand secured by said mortgage.

JOSEPH M. ROWELL, *Deputy Sheriff.*"

Which demand was sent by mail to Ebenezer Colburn, at Stafford aforesaid.

At the time the demand was so sent by mail to Stafford,

Ebenezer Colburn was away from Stafford, and did not receive the demand or have any knowledge of it until after he had made the assignment hereinafter mentioned, to the plaintiffs, nor until more than fifteen days after the demand would in due course of mail have reached Stafford; and said Ebenezer made no answer and set forth no account of the amount secured by the mortgage, either upon or after the receipt of the demand.

On the 13th day of July, 1854, Ebenezer Colburn, in writing upon said mortgaged deed, made an assignment to the plaintiffs of the mortgage, and all his right, title and claim by virtue thereof to the property therein mentioned; the assignment setting forth that the assignor had at the same time transferred and delivered to the plaintiffs the notes mentioned in the condition of the mortgage, " to have and to hold said mortgage, and the property therein described, as fully and completely as I myself could do for the security of said notes, and said notes absolutely as their own property." This assignment was not recorded. At the time of making the assignment Ebenezer Colburn delivered notes to the plaintiffs, answering the description of those in the mortgage, except that the note therein described as dated February 26, 1854, was dated February 24, 1854.

On the 15th day of July, 1854, and as part of the same transaction with the assignment, the plaintiffs executed and delivered to Ebenezer Colburn the following instrument:

" CONCORD, N. H., July 15, 1854.

Whereas Ebenezer Colburn did, on the 13th day of July, 1854, transfer and assign to us a mortgage for $1200, on the stock of goods of John S. Colburn, in the village of Suncook, in Pembroke, New-Hampshire, being all the goods now in and about the store heretofore occupied by him in said Suncook, and all the goods, wares and merchandize in and about said store, owned by said John S. Colburn; also one gray colored horse and store wagon; which said mortgage is dated June 12, 1854, and has at the same time transferred and delivered to us the note mentioned in the condition of said mortgage: We hereby agree that if we shall receive from the proceeds of the goods included

in said mortgage more than money enough to pay the debt due us from said John S. Colburn, and such costs and expenses as may be incurred in and about the same, and in and about any suits into which we may be drawn by claiming said goods, that we will account for and pay over to said Ebenezer Colburn, on demand, any balance remaining in our hands, after payment of our debt, and such costs and expenses.

(Signed)  Jos. A. GILMORE & Co."

On the 20th day of July, 1854, said Rowell delivered to John H Pearson, one of the plaintiffs, the following demand:

"HILLSBOROUGH ss.—JULY 20, 1854.

To JOHN H. PEARSON, Esq. :

SIR : I have attached a stock of goods as the property of John S. Colburn, of Pembroke, in the county of Merrimack and State of New-Hampshire. Said goods are said to be mortgaged to one Ebenezer Colburn, which mortgage has been transferred and is now said to be the property of Joseph A. Gilmore & Co. I now demand of you, as a member of the said firm of Joseph A. Gilmore & Co., an account under oath of the amount of the debt or debts, demand or demands, secured by said mortgage.

JOSEPH M. ROWELL, <em>Deputy Sheriff.</em>"

On the 21st of July, 1854, the plaintiffs returned to said Rowell the following answer, which was duly sworn to :

"CONCORD, N. H., July 21, 1854.

JOSEPH M. ROWELL, Esq., Deputy Sheriff, Manchester, N. H. DEAR SIR: The amount due to J. A. Gilmore & Co. from John S. Colburn, with interest cast up to the 20th inst., is five hundred and eighty-four and $\frac{8}{100}$ dollars ($584.08) for which we hold as security the notes and mortgage made by said John S. Colburn to his brother Ebenezer Colburn, and assigned to us by said Ebenezer Colburn, amounting to $1200. At the time of the assignment of said notes and mortgage to J. A. Gilmore & Co., we gave to said Ebenezer Colburn our obligation to pay over to him all money that we might receive on account of said mortgage, after deducting the amount of said John S. Colburn's

indebtedness to us, with all costs and expenses that we may in any way be at on account of closing up and disposing of the property conveyed in said mortgage.

                                    J. A. GILMORE & Co."

On the 22d day of August, 1854, the goods named in the declaration, being the same goods then in the above mentioned store, were sold by Rowell upon the writs against John S. Colburn.

At the time of the sale one of the plaintiffs was present, made claim of title under the mortgage, and forbade the deputy sheriff to sell or in any way interfere with the goods.

It was further agreed that if upon the foregoing case the court shall be of opinion that the plaintiffs' action could be maintained for that portion of the goods described in the mortgage, which were sold by the deputy sheriff, judgment should be entered for the plaintiffs for such a sum as a jury might determine, with costs, unless the parties should agree to submit the question of damages to an auditor, or in some other way, by agreement, determine the same ; and that if upon the foregoing statement the court should be of opinion that the plaintiffs were not entitled to recover, then judgment should be entered for the defendant, with costs.

*George & Foster*, for the plaintiffs.

1. The letter sent by mail to Ebenezer Colburn was not such a demand as is required by the 17th and 18th sections of chap. 195, Comp. Stat. The demand should have been personal. *Hartford Bank* v. *Hoster*, 3 Day 491 ; *Anonymous*, 6 Holstead 94 ; *Phelps* v. *Gilchrist*, 8 Foster 266 ; *Claiborne* v. *Frazier*, 2 Brevard 47. At most, putting the letter into the post-office is but a fact, which, uncontrolled by other evidence, might authorize the jury to *infer* notice.

The demand was also insufficient, because it did not indicate in any manner the place of residence of the officer making the demand, nor point out any place to which the mortgagee should send his account. It would seem to be unreasonable to compel

a party residing at a distance, and in another State, to search throughout New-Hampshire for the person requiring the account. *Farr* v. *Dudley*, 1 Foster 372.

2. The transfer to the plaintiffs of the notes secured by the mortgage from John to Ebenezer was a transfer of the mortgage. It might legally have been a parol transfer. It is, therefore, of no consequence that the assignment was not recorded. *Whittemore* v. *Gibbs*, 4 Foster 484, and cases cited. Neither is it material that one of the notes delivered by Ebenezer to the plaintiffs varied slightly from the description given of it in the condition of the mortgage. It is sufficient to pass the property in the notes and the security, if it appear with reasonable certainty to be the notes described. *Webb* v. *Stone*, 4 Foster 282.

The plaintiffs consequently succeeded to all the rights which Ebenezer had under the mortgage. Moreover, the defendant, by his deputy, had actual notice of the assignment, and recognized its validity, as appears by his act in making a demand upon Pearson.

The account rendered by the plaintiffs was sufficient, within the meaning of the 18th section of the statute. The statement of the amount due upon the debt secured by the mortgage is sufficiently intelligible. It need not be *omni exceptione major*. Only a reasonable degree of accuracy is required. *Webb* v. *Stone*, before cited ; *Belknap* v. *Wendell*, 1 Foster 184 ; *Harding* v. *Coburn*, 12 Met. 333 ; *Averill* v. *Fisk*, 1 Gray 254 ; *Jones* v. *Richardson*, 10 Met. 481.

*D. & D. J. Clark*, for the defendant.

SAWYER, J. This case comes before us upon an agreed statement of facts, and the only material question in the case is, whether the mortgage given by John S. Colburn to Ebenezer Colburn, and assigned to the plaintiffs, has become invalid and ineffectual to hold the property mortgaged, as against the attachments made by the creditors of John S. Colburn, the mortgagor, by reason of the neglect of the mortgagee or of the plaintiffs,

holding the mortgagee's interest, to render an account on oath of the amount of the mortgage debt.

It may be assumed, upon the facts stated, that the mortgage was duly executed and recorded, as required by the statute, to give a mortgagee's lien upon the goods as against third persons; that it was made in good faith, to secure a just debt from John S. to Ebenezer Colburn; that it was duly assigned by Ebenezer to the plaintiffs, as collateral security for the payment of whatever debt might be due from John S. Colburn to them, and that at the time it was so assigned it was, and from that time down to the 22d of August, when the plaintiffs made claim to the goods under it, it continued to be a valid, subsisting mortgage in their hands, unless invalidated by the demand for an account on oath of the amount of the mortgage debt, and the failure of Ebenezer Colburn, or of the plaintiffs, or both, to render such account. The facts that the assignment of the mortgage from Ebenezer to the plaintiffs was not recorded, and that the date of one of the notes, delivered upon the assignment as one of the mortgage notes, does not correspond with the description in the condition of the mortgage, are immaterial. The plaintiffs, at least, cannot object either to the want of such record or to the variance between the true date of the note and that given as its date in the mortgage.

When the goods were attached on the 16th of June, they were the property of the debtor, John S. Colburn, subject to the mortgage, and as such they were liable to be attached at the suit of his creditors. Such attachment would continue to be valid, as an attachment giving the officer the right to the possession of the goods until the holder of the mortgage should elect to interpose his claim to them, and insist upon his rights as mortgagee. If, upon such claim being made, the attaching creditor should determine to maintain his attachment, upon the ground that the mortgage was fraudulent as to creditors, or invalid for want of execution according to the statute requirements, or because it had been discharged by payment of the mortgage debt, or otherwise, he might, of course, treat it as a nullity, and it would be optional with him to demand of the holder an account on oath of the

amount of the mortgage debt, or not, as he might deem advisable. If the account should be demanded, and it should not be given, then the creditor would be at liberty to waive all questions as to the invalidity of the mortgage on other grounds, and rest upon that which the neglect to render the account would furnish; or he might set up any or all of these grounds of defence against the claim under the mortgage, at his pleasure.

If, on the other hand, the account demanded should be given, the other questions would still be open to him, as though the account had not been demanded.

If, however, upon a just and true account being given, no sufficient answer could be made by him on other grounds to the claim set up under the mortgage, then the only legal mode in which he could maintain the attachment would be by paying or tendering to the holder of the mortgage the amount of the mortgage debt, and thus effecting a release of the mortgage-lien; and it is for this purpose—in order to enable the creditor to make a tender of the exact sum for which the goods are held under the mortgage—that the statute requires such account to be rendered on oath, upon demand of the creditor or officer making the attachment.

The 15th section of chap. 184 of the Revised Statutes, 369, provides that goods mortgaged may be attached as the property of the general owner; " the attaching creditor or officer paying or tendering to the mortgagee, or holder, the amount for which said property is holden, to be ascertained in the mode prescribed in the following section," which is as follows, sec. 16, of the same chapter: " Such creditor or officer may demand of the mortgagee, or holder, an account on oath of the amount due upon the debt or demand secured by the mortgage, and the officer may retain the property in his custody until the same is given without tender or payment; and if such account shall not be given within fifteen days after the demand, or if a false account shall be given, the property may be holden discharged from the mortgage."

The attachments being made on the 16th of June, a demand

in writing was forwarded by mail to the mortgagee on the 26th. This, however, did not come to his hands until after he had assigned the mortgage to the plaintiffs, which was on the 15th of July. It is unnecessary to consider whether the demand made on the mortgagee, and his neglect to render the account, would be sufficient to discharge the mortgage lien as to him. The question is not between him and the attaching creditors ; and it is immaterial, in the determination of this case, how the parties might have stood in case no assignment had been made by Ebenezer, the mortgagee, and the creditors were endeavoring to maintain their attachment against his claim under the mortgage. The question here is, how do the plaintiffs stand as the holders of the mortgage from the time of the assignment on the 15th of July, in this contest between them and the attaching creditors, under the demand made upon them on the 20th, and their account rendered on the day following ?

That the creditor or officer making the demand should be held to a strict compliance with all the substantial requirements of the statute, where the consequences of a failure by the other party to comply with the demand are of so serious a character as the forfeiture of the mortgage lien, would seem to be but reasonable. Before he should be at liberty to ask that it should be held in his favor that such a forfeiture had been incurred, he should be required to show that he had strictly fulfilled all the prerequisites prescribed by the statute for such a result. *Farr* v. *Dudley*, 1 Foster 372.

But a literal compliance is not to be exacted where substantially the same thing is done which the statute requires. The statute requires a demand " of an account on oath of the amount due upon the debt or demand secured by the mortgage." The demand, however, need not be in the very words of the statute. It is enough if the words used in the demand to describe the account required, do in fact designate the same account as that described in the statute. In the 15th section the creditor or officer is required to tender " the amount for which the property is holden," and that amount is to be ascer-

tained in the mode prescribed in the 16th section; and that mode is by demanding an account, not in the same words, of the amount for which the property is holden, but " of the amount due upon the debt or demand secured by the mortgage ;" and it is obvious that precisely the same thing is meant by the two forms of expression. The demand made upon the plaintiffs was for " an account under oath of the amount of the debt or debts, demand or demands, secured by the mortgage." This can be understood to mean nothing more or less than the account intended by the statute. To speak of an account under oath of the amount of the debt secured by a mortgage, must convey to every mind the same idea as if either form of expression contained in the statute had been adopted.

The demand, then, upon the plaintiffs being in conformity with the statute, it was their duty to have rendered the account demanded ; such account as would have informed the officer of the sum claimed to be due upon the debt secured by the mortgage, in order that that sum might have been paid or tendered in discharge of the mortgage lien. It is clear that the account rendered by the plaintiffs was not such account. It does not purport to be such. It is a statement merely of the amount due from John S. Colburn to them, for which the mortgage and mortgage debt had been assigned as collateral security. Such statement could in no way contribute to inform the attaching creditors of the sum, as claimed by the holder of the mortgage, necessary to be paid in order to discharge the mortgage lien on the goods attached. The debt due from John S. Colburn to the plaintiffs may be more or it may be less than the amount of the debt for which the goods are holden under the mortgage. If more, then clearly the creditor would not be required to tender that amount in order to extinguish the mortgage lien. If less, the payment of that amount would not have the effect to extinguish it, for it would still be valid for the unpaid balance.

The assignment to the plaintiffs gave them the right to receive payment of the entire mortgage debt, and to surrender up the mortgage and mortgage notes, though the amount might exceed

---
Gilmore *v.* Gale.                 .
---

the debt for which they held them as collateral. The receipt given by them upon taking the assignment contemplates the possibility of there being a surplus in their hands arising from the mortgage notes. They must then be presumed to know what amount was due upon those notes ; and if taking them into their hands, with authority to receive payment and surrender them to the maker upon payment of the amount due, there was further knowledge necessary to be obtained, in order to their being fully informed of the amount due, then it was their duty upon demand ·made to have obtained that information, or to have given the account upon such information as they had, qualifying their oath to the account in accordance with the facts. In the statement which they furnished, mention is made of the notes and mortgage given by John S. to Ebenezer Colburn, and assigned to them by Ebenezer, amounting to $1200. It is apparent that this expression, " amounting to $1200," was used only as descriptive of the mortgage, and was not intended nor could it reasonably be understood by the creditors or officer as designed for an account of the amount of the debt secured by the mortgage.

There was then no such account rendered by the plaintiffs as the attaching creditors had the right to demand and did demand. Consequently, the officer was at liberty to hold the goods, as against these plaintiffs, discharged from the mortgage ; the proceedings of the officer in making the sale were not a conversion of their property, and according to the agreement of the parties there must be

*Judgment for the defendant.*